

Minute Order Form (rev. 97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3420 | **DATE** | 5/4/2004 |
| **CASE TITLE** | Patricia Yonts vs. Jo Anne Barnhart | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiff's Motion for Summary Judgment [#16] is hereby **granted**; Defendant's Cross-Motion for Summary Judgment [#18] is hereby **denied**. The Court remands the case to the Commissioner for further proceedings consistent with this Opinion. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 0 4 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 5/4/2004 | 20 |
| | | | date mailed notice | |
| FT/*recy* | courtroom deputy's initials | | FT | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

U.S. DISTRICT COURT
CLERK
2004 MAY -4

PATRICIA YONTS,                          )
                                         )
               Plaintiff,                )
                                         )
       v.                                )       Case No. 03 C 3420
                                         )
JO ANNE B. BARNHART,                     )       Magistrate Judge Arlander Keys
Commissioner of Social                   )
Security,                                )
                                         )
               Defendant.                )

DOCKETED

MAY 0 4 2004

## MEMORANDUM OPINION AND ORDER

On December 11, 2000, after her mother died, Patricia Yonts
applied for survivor's benefits as a disabled adult child; she
was almost 43 years old when she filed the application.  The
Social Security Administration ("SSA") denied her application
initially on December 19, 2000, because it found that she had
engaged in substantial gainful activity after attaining the age
of 22.  Record at 14-15.  That decision was affirmed on
reconsideration on January 17, 2001.  Record at 18-19.  Ms. Yonts
then requested a hearing, and the case was assigned to
Administrative Law Judge Maren Dougherty, who heard the matter on
December 7, 2001.

At the hearing before the ALJ, Ms. Yonts, who was
represented by counsel, testified that she suffers from a bipolar
affective disorder.  She testified that she had received

Supplemental Security Income ("SSI") because of that disorder; she began receiving SSI in 1993 and continued to receive it at least through the date of the hearing.[1]  Record at 155-56.

With respect to her work history, Ms. Yonts testified that she vaguely recalled working when she was younger for a week or two, but that she had not otherwise worked until October of 1993, when she secured a job at Service Merchandise because her "psychiatrist thought it might be good therapy for [her] to try to get out into the world around people." Record at 156.  She testified that Service Merchandise initially hired her as a seasonal employee, and she spent the first two months on the job working at the jewelry counter, helping out during the busy holiday season.  *Id.* at 161-62.  She testified that, after the holidays, the store kept her on because "they liked me"; she was then given the task of answering phones and transferring calls to the appropriate department within the store, and, in that job, she sat in an upstairs room, away from the shopping public.  *Id.* at 161, 163-64.

Ms. Yonts testified that, because of her bipolar disorder, she had trouble handling her job at Service Merchandise; she testified that, each day she worked, she felt "sick to my stomach, shaking, overwhelming feeling that I needed to be home."

---

[1]It is not clear from the record whether Ms. Yonts' SSI payments continue to date.  But her SSI claim is not before the Court; this case concerns only her claim for survivor benefits.

Record at 157. Ms. Yonts testified that she finally left her job in mid-1995; she took a medical leave of absence and never went back. *Id.* at 158.

In addition to her work history, Ms. Yonts testified briefly about her personal life. She testified that she was married briefly when she was 18 years old, but that, despite her marriage, she continued to live with her mother. Record at 159. She testified that she married Charles Yonts on October 25, 1975, and that they separated a couple of months later, after she learned that he was actually still married to another woman; she testified that their divorce was final in 1977 or 1978. Record at 159-60.

In addition to Ms. Yonts' testimony and the arguments of counsel, the ALJ considered documentary evidence submitted before and during the hearing. That evidence includes divorce records, confirming both that Charles Yonts' marriage to Pearlie Yonts, which began on December 18, 1971, was officially ended on March 23, 1976, and that Charles Yonts' marriage to Patricia Yonts, the claimant, began on October 25, 1975 and officially ended on September 14, 1979. *See* Record at 138-40. And it also includes payroll records, both pay statements from Service Merchandise and a summary of Ms. Yonts' "FICA Earnings" covering the years from 1974 to 1995. *Id.* at 63-135, 43. According to the latter summary, Ms. Yonts earned $320 in 1974, then earned nothing

3

further until 1993. *Id.* at 43. She earned $484.50 in 1993, $6,124.41 in 1994, and $1,603.21 in 1995. *Id.*

The record also contains two letters. The first is a letter from Ms. Yonts dated May 29, 2001; in it, Ms. Yonts explains that she had always lived with her mother and depended on her mother's income to survive, and that she was trying to hold things together since her mother's death, for her own sake and for the sake of her two daughters, ages 3 and 12. Record at 29. She also begged to have her case heard and resolved quickly, before she "loses everything." *Id.* The second letter, written November 21, 2001, is from Ms. Yonts' attorney to the ALJ; it explains that a portion of Ms. Yonts' 1994 "earnings" ($233.68) constituted vacation pay, which, according to the attorney, should not have been included in the SSA's underlying substantial gainful activity analysis. Record at 59.

The ALJ issued her decision on February 21, 2002, finding that Ms. Yonts was not entitled to benefits because she engaged in substantial gainful activity after reaching the age of 22. Record at 8-9. The crux of the ALJ's decision is as follows:

> A review of claimant's earnings record reveals that she earned $6124.41 in 1994 and $1603.21 in 1995. The claimant asserts that the figure for 1994 is inflated due to the inclusion of commissions earned in 1993 as well as $233.68 vacation pay for 1994 (Exhibits 4, 23). Nevertheless, by her own admission, the claimant earned over $500 in January, July, August, September, and December 1994. Moreover, this was true despite the receipt of vacation pay (Exhibit 21).

4

Record at 8. In short, the ALJ denied Ms. Yonts' claim because she earned more than $500 in five months in 1994. Having made this finding concerning Ms. Yonts' work activities, the ALJ determined that she need not reach the question of how Ms. Yonts' brief (and apparently illegal) marriage might affect her eligibility for benefits. *Id.* at 8.

The ALJ's decision became the final agency decision when the Appeals Council denied review on March 26, 2003. *See* 20 C.F.R. §416.1481. Ms. Yonts then filed this lawsuit, seeking review of the decision to deny her benefits. The parties consented to proceed before a magistrate judge, and the case was reassigned to this Court on September 9, 2003. Thereafter, both parties moved for summary judgment. Ms. Yonts asks the Court to reverse the Commissioner's denial of her claim for benefits, or, in the alternative, to remand the case to the Commissioner for further proceedings. The Commissioner has filed a cross-motion for summary judgment, asking the Court to affirm the ALJ's findings.

## Discussion

An ALJ's decision must be affirmed if it is supported by substantial evidence and free of legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Where, however, "the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940. In

the Seventh Circuit, an ALJ must "build an accurate and logical
bridge from the evidence to [his] conclusions so that [the Court]
may afford the claimant meaningful review of the SSA's ultimate
findings." *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569
(7th Cir. 2003). It is not enough that the record contains
evidence to support the ALJ's decision; if the ALJ does not
rationally articulate the grounds for that decision, the Court
must remand. *Steele*, 290 F.3d at 941.

Here, the ALJ determined that Ms. Yonts "earned over $500 in
January, July, August, September and December 1994," then
concluded that "the claimant engaged in substantial gainful
activity subsequent to her attainment of the age of 22 and is
therefore not entitled to childhood insurance benefits based on
disability." Record at 8. Ms. Yonts asks the Court to reverse
the decision below because the ALJ's findings about her earnings
were simply wrong - both in terms of mathematical calculations,
and in terms of what the Social Security rules and regulations
instruct.

Ms. Yonts first challenges the ALJ's finding that she earned
more than $500 in December 1994. With her motion for summary
judgment she included a chart summarizing her earnings, and,
according to that chart, she earned only $418.04 in that month.
*See* Plaintiff's Memorandum in Support of Her Motion for Summary
Judgment, Exhibit A. The Commissioner, having raised no

challenge or objection to the chart, appears to agree with the figures and information provided therein. That Ms. Yonts earned less than $500 in December is of little consequence, however, because her chart shows that the ALJ actually erred in her favor with regard to the month of June 1994. Thus, although the ALJ may have gotten the particulars wrong, she was correct in concluding that Ms. Yonts earned more than $500 in five months in 1994.

The real issue in this case is not whether the ALJ's calculations of monthly earnings were correct, but whether the ALJ was right to look at the individual months in the first place. On this score, Ms. Yonts argues that the ALJ improperly failed to average her earnings across the actual period of time she worked, opting instead to look at each individual month in the period. Ms. Yonts argues that, if the ALJ had looked at an average of her monthly earnings, as provided in the regulations, she could not have concluded that Ms. Yonts performed substantial gainful activity.

The Social Security Act provides for a "child's insurance benefit" to

> [e]very child . . . of an individual who dies a fully
> or currently insured individual, if such child-
> (A) has filed an application for child's insurance
> benefits,
> (B) at the time such application was filed was
> unmarried and . . . is under a disability (as defined
> in section 423(d) of this title) which began before he
> attained the age of 22, and

(C) was dependent upon such individual . . . at
the time of [her] death . . . .

42 U.S.C. §402(d)(1). The ALJ appears to have assumed that Ms.
Yonts satisfied the criteria set forth in subparagraphs (A) and
(C) above; she also seems to have assumed that Ms. Yonts' mother
was fully or currently insured at the time of her death. And
neither the Commissioner nor Ms. Yonts challenges these
assumptions. This appeal challenges only the ALJ's decision to
deny benefits based upon Ms. Yonts' work at Service Merchandise,
and the underlying determination that such work constituted
"substantial gainful activity" that prevented her from satisfying
the disability criteria in subparagraph (B) above.

For purposes of determining whether a claimant seeking
survivor benefits is disabled, the regulations teach that a
claimant's earnings play a significant role in the analysis: the
regulations provide that, during the relevant time period,
monthly earnings averaging more than $500 will ordinarily show
that the claimant has engaged in substantial gainful activity
(this is the "SGA threshold"); conversely, monthly earnings
averaging less than $300 will ordinarily show that the claimant
has not engaged in substantial gainful activity (this is the non-
SGA threshold). 20 C.F.R. §§404.1574(a)(1), (b)(2)-(3) (West
2004). For average monthly earnings that fall between the two
thresholds, the regulations instruct the Commissioner to consider
other information, beyond just the amount of the earnings,

including whether the work being done is comparable, in terms of the amount of time, energy, skill and responsibility involved, to work being done by unimpaired people in the community. *Id.* §404.1574(b)(6)(iii). The regulations further provide that, "[i]f your work as an employee . . . was continuous without significant change in work patterns or earnings, and there has been no change in the substantial gainful activity earnings levels," the substantial gainful activity question is determined by "averag[ing] your earnings over the entire period of work requiring evaluation . . . ." 20 C.F.R. §404.1574a(a) (West 2004).

As explained, the ALJ determined that Ms. Yonts had engaged in substantial gainful activity exclusively because she earned more than $500 in several months in 1994. There is no indication that the ALJ ever calculated or considered average monthly earnings for the period of employment. This was improper under the regulations.

In response to Ms. Yonts' challenges, the Commissioner argues that the ALJ actually determined that Ms. Yonts' average monthly earnings fell somewhere between the SGA and non-SGA thresholds, and that the ALJ then went on to consider the other factors articulated in §404.1574(b)(6)(iii), ultimately concluding that Ms. Yonts performed work comparable to that of an unimpaired telephone receptionist. *See* Defendant's Memorandum in Support of Commissioner's Motion for Summary Judgment, pp. 13-14.

If that were truly the case, the Court would likely affirm the ALJ's decision. The problem is that the ALJ's decision gives no indication that she applied the regulations in this manner, that she ever calculated average monthly earnings, or that she ever considered the other factors specified in §404.1574(b)(6)(iii). Based on the record before it, the Court finds that the ALJ's focus on individual months, her failure to average monthly earnings across the entire period of work, was inconsistent with the SSA's regulations, and the case must be remanded.

Ms. Yonts argues that, because she is in such dire straights, teetering on the brink of losing her home, the Court should reverse and award benefits without remanding the case. Although the Court is sympathetic to Ms. Yonts' plight, it declines to grant Ms. Yonts' request. An award of benefits without remand is appropriate "'when no useful purpose would be served by further administrative proceedings, or when the record has been fully developed and there is not sufficient evidence to support the ALJ's conclusion.'" *Criner v. Barnhart*, 208 F.Supp. 2d 937, 958 (N.D. Ill. 2002) (quoting *Holden v. Shalala*, 846 F.Supp. 662, 669-70 (N.D. Ill. 1994)). That is not the case here.

The parties agree that Ms. Yonts' average monthly earnings, not including vacation pay, were around $460.00 during the year 1994. *See* Commissioner's Brief, p. 3; Ms. Yonts' Brief, p. 6 and

10

Exhibit A. In other words, if averaged, Ms. Yonts' earnings fall between the $500 SGA threshold set forth in §404.1574(b)(2) and the $300 non-SGA threshold set forth in §404.1574(b)(3). But that alone, does not dictate that Ms. Yonts is entitled to benefits. Rather, the fact that her average earnings fall between the SGA and non-SGA thresholds means that factors besides earnings must be considered. Here, the ALJ looked at Ms. Yonts' earnings and stopped. Because she never considered the factors enumerated in §404.1574(b)(6)(iii), the record is largely silent on whether, for example, Ms. Yonts' job at Service Merchandise was comparable to work being done by unimpaired people in the community.

Nor was the issue of Ms. Yonts' impairment ever fully developed in the record; indeed, because the ALJ focused the hearing exclusively on earnings, the record contains no medical records and only a few brief mentions of Ms. Yonts' bipolar affective disorder. These issues, and any other issues necessary to resolve the question of whether Ms. Yonts was disabled within the meaning of §402(d)(1)(B), and whether she otherwise satisfies the criteria of §402(d), must be addressed on remand. On the record before it, the Court is unable to say whether or not Ms. Yonts is entitled to child's insurance benefits.

Depending on how the Commissioner decides the substantial gainful activity and disability questions on remand, she may or

may not be required to reach the question of what impact, if any, Ms. Yonts' marriage may have had on her eligibility to receive benefits. To the extent it becomes an issue, however, the Court notes simply that the Act and regulations do not appear to dictate that marriage forever destroys a claimant's eligibility to receive benefits under §402(d); on the contrary, the language of §402(d)(1)(B) would seem to suggest that the relevant inquiry is whether the applicant was married at the time she filed her application, not whether she had ever married at any time in the past.

## Conclusion

For the reasons set forth above, the Court grants Ms. Yonts' motion for summary judgment and denies the Commissioner's motion. The case is remanded for further proceedings consistent with this opinion. Given Ms. Yonts' dire situation, as recognized by the ALJ, the Commissioner is urged to handle the remand of this matter as expeditiously as possible.

Dated: May 4, 2004

ENTER:

_Arlander Keys_
_____
ARLANDER KEYS
United States Magistrate Judge